UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Daniel Lamy**

     v.                                   Case No. 21-cv-174-PB
                                             Opinion No. 2021 DNH 183

**Kilolo Kijakazi, Commissioner**
**Social Security Administration**

**MEMORANDUM AND ORDER**

Daniel Lamy challenges the denial of his applications for disability insurance benefits pursuant to 42 U.S.C. § 405(g). He argues that the Administrative Law Judge ("ALJ") who found him not disabled failed to properly evaluate the medical opinion evidence supporting his applications.  The Commissioner, in turn, moves for an order affirming the ALJ's decision.  For the following reasons, I grant Lamy's motion and deny the Commissioner's motion.

## I.   BACKGROUND

### A.   Procedural Facts

Lamy originally applied for disability insurance benefits on January 26, 2015, alleging disability as of September 18, 2013, when he was forty-nine years old.  Tr. 156-57.  He worked for more than twenty-five years as a torch blazer and brazing machine operator in a General Electric aircraft manufacturing facility in Hooksett, New Hampshire.  Tr. 597-98.  After he stopped working due to back pain and leg weakness in 2011, Lamy

received General Electric disability retirement benefits.  Tr.
599-600.  He was insured for Social Security disability
insurance benefits through September 30, 2017.

Lamy's application was initially denied in July 2015.  In
August 2016, he testified at a hearing before ALJ Elizabeth
Tafe, who ultimately denied his application.  See Tr. 23-35.
After the Appeals Council denied his request for review, Lamy
sought review in this court.  See Tr. 2-7, 649-51.

The court (Judge McAuliffe) vacated ALJ Tafe's unfavorable
decision and remanded the case for further proceedings.  Remand
was warranted, the court reasoned, because the ALJ had failed to
give sufficient reasons for affording only limited weight to the
opinions of Lamy's treating providers.  See Lamy v. Berryhill,
2018 DNH 131, 2018 WL 3104430, at *4-6 (D.N.H. June 22, 2018).
The court also noted that the opinion of non-examining state
agency physician Dr. William Backlund, to which the ALJ had
assigned "great weight," was "cursory to the point of lacking
any meaningful discussion of the medical record" and "without
adequate explanation, entirely inconsistent with the opinions of
claimant's three treating sources."  Id. at *6 n.2.

In the meantime, Lamy filed a subsequent application for
disability insurance benefits in January 2018, with an alleged
disability onset date of November 3, 2016 (the day after the
date of ALJ Tafe's unfavorable decision).  That application was

2

denied at the initial level in March 2018.  Tr. 652-65.  Lamy's
appeal of the denial was consolidated with his original
application when the Appeals Council remanded the case for a new
hearing.  Tr. 707-10.

On January 7, 2020, a hearing was held before ALJ Matthew
Levin on the consolidated claims.  The ALJ noted that he had
requested that an impartial medical expert testify at the
hearing, but this was not scheduled due to an administrative
oversight.  Tr. 595, 570.  The ALJ issued an unfavorable
decision later that month, finding that Lamy had not been
disabled from his alleged disability onset date of September 18,
2013, through his date last insured of September 30, 2017.  Tr.
566-84.  In his decision, the ALJ noted "that an impartial
medical expert is not necessary to a determination of
disability" in Lamy's case.  Tr. 570.

**B.   <u>Medical Opinion Evidence</u>**

At the agency's request, Lamy underwent a consultative
examination with Dr. Peter Loeser in May 2015.  He told Dr.
Loeser that he suffered from chronic low-back pain that started
after a motorcycle accident about twenty-nine years earlier and
had progressively worsened.  Tr. 384.  During the examination,
Lamy was able to move his arms and legs without restriction, his
gait, strength, and sensation were normal, and he "move[d] with
ease around the examination room without any apparent deficits

3

or impairments." Tr. 385-86. Dr. Loeser noted "findings of mildly limited range of motion on physical examination relate[d] to the low back" but indicated that he could not properly evaluate Lamy's low-back pain because no imaging studies, specialist reports, or treatment records beyond one office visit note were available for him to review. Tr. 386.

In July 2015, Dr. Backlund, the state agency's physician, reviewed: (1) Dr. Loeser's examination report; (2) treatment records from Dr. Powen Hsu from July 2013 to May 2014; (3) treatment records from Granite State Internal Medicine, where Dr. Thomas Synan worked, from August 2013 to January 2015; and (4) an imaging study of Lamy's left knee from April 2015. See Tr. 89-90, 244-387. Based on his review, Dr. Backlund opined that Lamy could stand or walk for a total of six hours in an eight-hour workday and sit for about six hours. Tr. 95. Dr. Backlund acknowledged that Lamy had degenerative disc disease in the lumbosacral spine but noted that "no spinal or foraminal stenosis [was] identified" and that his pain was controlled with medication. Tr. 93, 95.

In July 2016, following a trip to the emergency room for severe back pain, Lamy had a surgical consult with Dr. Uri Ahn at the New Hampshire NeuroSpine Institute. Tr. 524-26. Dr. Ahn noted that lumbosacral spine x-rays showed "significant degeneration lateral osteophytes loss of disc space height at

4

L3-4" and that an MRI from 2014 "demonstrates similar findings
with loss of disc space height at L3-4 but no evidence of
significant foraminal or central canal stenosis."  Tr. 525.  Dr.
Ahn also noted that Lamy had been off prescribed pain medication
for the past eight months because they had caused him liver
damage.  Tr. 524.  Based on the imaging and the consultation,
Dr. Ahn diagnosed Lamy with degenerative disc disease at L3-4
and spinal stenosis of the lumbar region.  Tr. 525-26.  Dr. Ahn,
however, did not recommend surgery because of its low success
rate, the possibility of infection and nerve damage, Lamy's
cigarette smoking, and the fact that he was not suffering from
constant severe pain.  Tr. 525-26.  Because Lamy's pain was
episodic, surgery was not recommended, "no matter how severe"
his pain was.  Tr. 526.

Four of Lamy's treating physicians subsequently filled out
disability paperwork on his behalf.  Dr. Powen Hsu, a pain
specialist who had treated Lamy since at least 2009 for low-back
pain, filled out a medical source statement on July 21, 2016.
He indicated that Lamy had been diagnosed with lumbar
spondylosis, cervical spondylosis, and fibromyalgia, which had
caused him pain and fatigue since September 2013.  Dr. Hsu
opined that Lamy would need to take unscheduled breaks, shift
positions at will, have periods of walking, sit for only two
hours, stand or walk for less than two hours, and miss more than

four days of work per month due to his symptoms.  He also
indicated that Lamy's symptoms would constantly interfere with
his attention and concentration and that he was incapable of
even low-stress jobs.  Tr. 389-93.

Later that month, Dr. Thomas Synan filled out the same form
on Lamy's behalf.  Dr. Synan was Lamy's primary care provider
for more than twenty years, until Dr. Synan left the area in
2014.  He wrote that he had treated Lamy several times per year
during that period and based his opinion on his recollection.
According to Dr. Synan, Lamy suffered from degenerative discs
and arthritis in the lumbar spine, which caused him low-back
pain, leg pain, and leg weakness.  He opined that those symptoms
would frequently interfere with Lamy's attention and
concentration.  Dr. Synan also indicated that Lamy could sit for
less than two hours, could stand or walk for less than two
hours, and would need periods of walking, the ability to shift
positions at will, and unscheduled breaks during the workday.
In addition, Dr. Synan opined that Lamy would likely be absent
from work more than four days every month due to his
impairments.  Tr. 448-52.

The following month, Dr. Alan Stein, who became Lamy's
primary care provider after Dr. Synan left, also submitted a
medical source statement.  He indicated that Lamy suffered from
chronic back pain and degenerative disc disease that was

unlikely to improve.  According to Dr. Stein, Lamy's pain was
moderate to severe and occurred "every day all the time" but
would rarely interfere with his attention and concentration.
Tr. 527-28.  Dr. Stein opined that Lamy could sit for about four
hours in an eight-hour workday, could stand for twenty minutes
at a time, and would need unscheduled breaks, periods of
walking, and the ability to shift positions at will.  Dr. Stein
also indicated that Lamy would need a cane to ambulate and was
likely to be absent from work more than four days per month due
to his symptoms.  Tr. 527-31.

On March 18, 2019, Dr. Peter Moran, who became Lamy's
primary care provider about a year before, also submitted a
medical source statement on his behalf.  He indicated that,
since 2013, Lamy had been unable to sit for more than two hours,
stand or walk for more than two hours, and would miss more than
four days of work per month due to his chronic back pain.
According to Dr. Moran, Lamy would need to take unscheduled
breaks, shift positions at will, have periods of walking, and
elevate his legs with prolonged sitting.  See Tr. 1720-24.  The
same day he signed this form, Dr. Moran saw Lamy during an
office visit and wrote in his treatment notes:

> I do not think he has enough objective evidence to
> support his appeal for disability.  I have only seen
> him in the last year for his diverticulitis.  We do
> not have supporting evidence in his chart.  He is
> asked to bring records from previous providers . . . .

> He has been out of work a long time because of his
> back but is not taking any pain medication.

Tr. 1718.  On examination, Lamy's lumbar and lumbosacral spine
exhibited some abnormalities, with Dr. Moran noting that he was
sitting "slightly slouched" and needed to "push with hands on
chair to get up" after squatting.  Tr. 1718.  The following
month, Lamy returned to Dr. Moran for an evaluation and brought
medical records with him.  Dr. Moran again noted that his lumbar
and lumbosacral spine exhibited abnormalities.  Tr. 1726.  In
December 2019, Dr. Moran signed a new medical source statement
indicating that he agreed with the restrictions he had assessed
in March 2019.  See Tr. 1911-15.

**C.   The ALJ's Decision**

The ALJ assessed Lamy's claim under the five-step,
sequential analysis required by 20 C.F.R. § 404.1520.  At step
one, he found that Lamy had not engaged in substantial gainful
activity since September 18, 2013, his alleged disability onset
date.  Tr. 572.  At step two, the ALJ found that Lamy had severe
impairments of degenerative disc disease of the lumbar and
thoracic spine, degenerative joint disease, osteoarthritis of
the knee, and hypertension.  Tr. 572.  At step three, the ALJ
determined that none of Lamy's impairments, considered
individually or in combination, qualified for any impairment
listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 573.

The ALJ then found that Lamy had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with some postural limitations.  Tr. 574.  The ALJ concluded that this RFC found support in the opinions of Drs. Backlund and Loeser, the objective medical evidence, and Lamy's activities of daily living.  Tr. 582.  In his assessment of the opinion evidence, the ALJ gave "great weight" to Dr. Backlund's opinion, "slightly less than great weight" to Dr. Loeser's opinion, "less than great weight" to the treating source opinions of Drs. Hsu, Stein, and Moran, and little weight to Dr. Synan's opinion.  See Tr. 578-81.

Relying on the testimony of a vocational expert, the ALJ then found at step four that Lamy could not perform his past relevant work.  Tr. 582.  But the ALJ found at step five that other jobs existed in the national economy that Lamy could perform, including a hand packer, a marker, and a small products bench assembler.  Tr. 583.  Accordingly, the ALJ concluded that Lamy had not been disabled from the alleged disability onset date through the date last insured.  Tr. 583.

## II.  STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  See 42 U.S.C. § 405(g).  That review is limited,

9

however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Commissioner's findings of fact so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. But her findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for her, not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (cleaned up).

10

### III.  __ANALYSIS__

Lamy challenges the ALJ's weighing of the medical opinion evidence in his record.  Four of his treating providers assessed restrictions that would render Lamy unable to work.  The ALJ discounted the functional limitations assessed in those opinions and instead credited the state agency physician's non-examining opinion that Lamy could perform light work and Dr. Loeser's findings on examination.  Lamy argues that the agency doctor's opinion was based on a significantly incomplete record and that his own doctors' opinions were entitled to more weight.  I need not decide whether the ALJ properly discounted the treating source opinions.  Assuming he did, a remand is nonetheless necessary because the remaining opinions in the record cannot provide substantial evidence to support the ALJ's findings.

It can be a reversible error for an ALJ to rely on an opinion of a non-examining consultant that was rendered without the benefit of the full medical record.  Byron v. Saul, 2019 DNH 131, 2019 WL 3817401, at *6 (D.N.H. Aug. 14, 2019); Brown v. Colvin, 2015 DNH 141, 2015 WL 4416971, at *3 (D.N.H. July 17, 2015); Ferland v. Astrue, 2011 DNH 169, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011).  An ALJ may rely on such an opinion only "where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent

11

with, or at least not 'clearly inconsistent' with, the reviewer's assessment." Meldrem v. Colvin, 2017 DNH 096, 2017 WL 2257337, at *2 (D.N.H. May 23, 2017) (quoting Ferland, 2011 WL 5199989, at *4).  An ALJ bears the burden of showing that either of these conditions is present and must make that determination "adequately clear." Giandomenico v. U.S. Soc. Sec. Admin., 2017 DNH 237, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).  In doing so, an ALJ may not interpret "raw medical data . . . until its functional significance is assessed by a medical expert." Id. at *5; see Manso-Pizzaro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996).  But he may make "common-sense judgments about functional capacity based on medical findings" that are within "the bounds of a lay person's competence." Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).  Such judgments are possible "where the evidence shows a 'relatively mild physical impairment posing, to the layperson's eye, no significant restrictions.'" Giandomenico, 2017 WL 5484657, at *4 (quoting Roberts v. Barnhart, 67 F. App'x 621, 623 (1st Cir. 2003)).

Dr. Backlund's opinion was based on a significantly incomplete medical record.  He rendered his opinion in July 2015, more than two years before the date last insured.  As relevant to Lamy's back pain, Dr. Backlund reviewed less than a year's worth of treatment records from Dr. Hsu (who treated Lamy

12

for at least seven years), about a year and a half of records
from the practice of Dr. Synan (who was Lamy's primary care
provider for more than twenty years), and Dr. Loeser's
examination report.  As Judge McAuliffe stated in the prior
remand order, Dr. Backlund's opinion was "cursory to the point
of lacking any meaningful discussion of the medical record" and
"without adequate explanation, entirely inconsistent with the
opinions of claimant's three treating sources."  Lamy, 2018 WL
3104430, at *6 n.2.  Indeed, Dr. Backlund reviewed the record a
year before any of Lamy's treating physicians rendered their
opinions.  Additional material evidence that postdated Dr.
Backlund's review includes Lamy's emergency room treatment for
an episode of severe back pain in June 2016 and his subsequent
surgical consultation with Dr. Ahn that resulted in a new
diagnosis.

     The ALJ's conclusion that Dr. Backlund's opinion was
consistent with subsequent medical evidence does not withstand
scrutiny.  As part of his sparse discussion of the medical
evidence, Dr. Backlund indicated that Lamy had not been
diagnosed with spinal or foraminal stenosis.  But a year later,
Dr. Ahn, in fact, diagnosed Lamy with spinal stenosis of the
lumbar region, based in part on x-rays of his lumbar spine that
were unavailable to Dr. Backlund.  Without the benefit of a
medical expert opinion addressing the functional significance of

13

this apparent change, the ALJ could not rely on Dr. Backlund's outdated opinion to support his findings.

Further, Dr. Backlund supported his opinion with reference to treatment notes indicating that Lamy's back pain was well controlled on prescription pain medication.  At that time, Lamy was taking prescription opioids.  But, as Dr. Ahn noted during his surgical consultation a year later, Lamy was forced to stop taking opioids because they were damaging his liver.  According to Lamy's testimony, he was subsequently limited to taking Ibuprofen or medicinal marijuana, laying back in his recliner, heat therapy, and soaking in the tub to manage his pain.  Tr. 58-60, 607-08.  This material change in pain management also undercuts Dr. Backlund's opinion.

Neither of those shortcomings could be cured by the ALJ's reliance on Dr. Loeser's examination report.  Both developments postdate that examination.  In addition, as Dr. Loeser acknowledged, he had no access to Lamy's longitudinal treatment record to evaluate his back pain.  His one-time examination at a time when Lamy was still taking opioids for pain management is of limited use and cannot, either standing alone or with Dr. Backlund's obsolete opinion, provide substantial evidence in support of the RFC finding.

In short, the Commissioner has not shown that substantial evidence supports the ALJ's finding that Lamy was able to do

14

light work during the relevant period.  The ALJ should have obtained a medical expert opinion that was based on the complete medical record before him in 2020, rather than relying on Dr. Backlund's review of a substantially incomplete record in 2015.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's motion to affirm (Doc. No. 10) is denied.  Lamy's motion to reverse (Doc. No. 8) is granted to the extent that the ALJ's decision is vacated and the case is remanded to the Commissioner for further proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

                                        /s/ Paul J. Barbadoro
                                        Paul J. Barbadoro
                                        United States District Judge

November 30, 2021

cc:  Counsel of record